CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 29 2011

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN E. BECKNER, | ) |
| | ) Civil Action No. 7:11-cv-00047 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By:   Judge James C. Turk |
| Commissioner of Social Security, | )        Senior United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff John E. Beckner ("Beckner") brought this action for review of Defendant Michael J. Astrue's ("the Commissioner") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("the Act"), as amended 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Both Beckner and the Commissioner filed motions for Summary Judgment. Oral argument was heard on November 21, 2011. The issue before the Court is whether substantial evidence supports the Commissioner's final decision that Plaintiff can perform a wide-range of unskilled sedentary and light work. For the reasons stated below, the Court finds that the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

### I. Standard of Review

When reviewing the Commissioner's final decision, the Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether they were reached through the application of the correct legal standards. See 42 U.S.C.

§ 405(g) (2006); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Accordingly, a reviewing court may not substitute its judgment for that of the Commissioner, but instead must defer to the Commissioner's determinations if they are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). The Commissioner's finding of any fact is conclusive provided it is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401. Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but it is "more than a mere scintilla of evidence [though] somewhat less than a preponderance," Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## II. Procedural History and Factual Background

Beckner was born on January 11, 1961, and was 46 at the time he alleges he became disabled. While he only completed formal education through the eighth grade, he subsequently earned a GED in 2000. He has been employed as a foreman, equipment operator of road paving machinery, and previously as a painter and as a shelf stocker at a home improvement store. (R. 32-33). Beckner alleges that he became disabled from all forms of substantial gainful employment on March 31, 2007. (R. 12). Beckner alleges his disability continues to this day and is the result of coronary artery disease, hypertension, chronic obstructive pulmonary disease, chronic pain including in his shoulder and wrists, carpel tunnel syndrome, heartburn, gastroesophageal reflux disease, and tremors. (R. 29-30). The record does not indicate a specific precipitating event that led to Plaintiff's allegation of complete disability.

Beckner filed applications for DIB and SSI on June 11, 2007. (R.12). His claims were denied on initial consideration and on reconsideration. Thereafter, Beckner requested and received a hearing and review before an Administrative Law Judge ("ALJ"). In an opinion dated

2

April 26, 2010, the ALJ also denied Beckner's requests for benefits determining that he was not disabled. Specifically, the ALJ determined that Beckner had several impairments that met the definition of a severe impairment under 20 C.F.R. §§ 404.1520(c) and 416.920(c): hypertension, coronary artery disease with stenting status post myocardial infarction, left shoulder impingement syndrome, polyarthralgia, and mild chronic obstructive pulmonary disease. (R. 14). However, the ALJ found that none of these impairments met or was medically equal to a listed impairment, as detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). Based on her review of the record the ALJ determined that Beckner had the residual functional capacity ("RFC") to:

> [L]ift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours out of an 8 hour workday; stand and/or walk for 2 hours out of an 8 hour workday; and occasionally reach with the left upper extremity, climb ramps/stairs, balance, kneel, stoop, and crouch; however the claimant can never crawl, work in an environment with pollutants/respiratory irritants/extreme temperature changes, work around hazardous machinery, work at unprotected heights, climb ladders/ropes/scaffolds, or work on vibrating surfaces.

(R. 17). Based on this RFC the ALJ found that although Beckner could not perform any of his past work there were jobs at the sedentary and unskilled level of exertion that Beckner could perform. (R. 23-24). The Commissioner adopted the ALJ's opinion, and Beckner now appeals.[1]

### III. Discussion

Plaintiff's Motion for Summary Judgment makes three main arguments in support of his request that this Court reverse the findings of the ALJ, as not supported by substantial evidence, and award Beckner the benefits he seeks. Plaintiff argues that the ALJ erred in (1) relying on the testimony of the vocational expert because the vocational expert cited jobs with physical

---

[1] Beckner has met the insured status requirements of the Act at all relevant times covered by the Commissioner's final decision. 42 U.S.C. §§ 416(i) & 423(a).

demands that exceeded the residual functional capacity proposed by the ALJ; (2) failing to give greater weight to the opinion's of Beckner's treating physician, Dr. Alan McLuckie; and (3) failing to properly evaluate Beckner's complaints of pain. After reviewing the record in this case, the Court finds that Plaintiff's arguments lack merit and that the Commissioner's final decision is supported by substantial evidence.

A. **The ALJ's Reliance on the Vocational Expert's Testimony Was Harmless Error**

Beckner argues that the ALJ erred in relying on the vocational expert's ("VE") testimony because the jobs identified by the VE that Beckner could perform require either *frequent or constant* reaching, while the ALJ found that Beckner was limited to *occasional* reaching with his left upper extremity.

As an initial matter, this Court is not convinced that the jobs cited by the VE are inconsistent with the hypothetical posed by the ALJ.[2] The hypothetical posed by the ALJ to the VE stated:

> Assume an individual such as the claimant who retains the residual functional capacity to perform work that requires the following: lifting and carrying, no more than 20 pounds occasionally, ten pounds frequently; standing and walking, no more than two hours in an eight hour workday; occasional climbing of ramps and stairs; balancing, kneeling, stooping, crouching, never crawling, *occasional reaching with the left shoulder*; and work that does not expose the worker to polluted environments, respiratory irritants, extreme temperature changes; nor to working around hazardous machinery, at unprotected heights, climbing ladders, ropes, scaffolds, or working on vibrating surfaces.

(R. 51-52) (emphasis added). Although the jobs cited by the VE do involve frequent or constant reaching, there is no evidence that Plaintiff would be unable to perform the reaching requirements by predominantly using his right arm and hand – the use of which is not limited by

---

[2] Additionally, the Court notes that the list of jobs cited by the VE does not appear to be an exhaustive list. (R. 54).

4

the ALJ's hypothetical and which the Court notes is Plaintiff's dominant extremity – and only occasionally using his left arm and hand for assistance. The objective medical evidence shows that Plaintiff has no limitations on the use of his right upper extremity. Plaintiff's right shoulder x-ray was normal. (R. 279). Plaintiff had full range of motion in his right shoulder, no joint enlargement or tenderness, and intact strength including motor capability. (R. 276, 282-83, 290, 299, 332, 350, 367, 369, 399-400, 456-57, 461, 624, 630).

Furthermore, the jobs cited by the VE – assembler, folder, laminator, and atomizer assembler – by definition are sedentary jobs that require "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles such as docket files, legers, and small tools." (R. 54). See also 20 C.F.R. §§ 404.1567(a), 416.967(a). The Court notes that nothing in this definition requires the use of both extremities in order to perform sedentary work. Moreover, with regard to an individual's exertional limitations, guidance issued by the Social Security Administration on how to evaluate a claimant's ability to do less than a full range of sedentary work, does not make any mention of the need to be able to use both extremities.[3] See Titles II and XVI: Determining Capability to do Other Work – Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, SSR 96-9p, 61 Fed. Reg. 34478 (July 2, 1996). Indeed, all that is required is that the individual be able "to lift 10 pounds or occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday…" 61 Fed. Reg. at 34481. In light of Plaintiff's lack or restrictions on the use of his right extremity and the reaching and lifting demands of the jobs cited by the VE, the Court finds that the ALJ's decision to rely on the VE's testimony is supported by substantial evidence.

---

[3] The guidance does note that any significant limit on the ability to use both hands for fine manipulation, a non-exertional limitation, "will result in a significant erosion of the unskilled sedentary occupational base." 61 Fed. Reg. at 34482. However, there is no evidence in the record that Plaintiff suffers from any manipulative limitations.

Additionally, the Court notes that Plaintiff's failure to raise the alleged discrepancy with the VE's testimony at the hearing precludes Plaintiff from raising it at this stage. Although the Fourth Circuit does not appear to have addressed the issue of a discrepancy between the VE's testimony and the ALJ's hypothetical, other Circuits have. In a case where the Plaintiff alleged the VE cited jobs at the "light" exertional level rather than the "sedentary" exertional level – the level at which the ALJ determined the Plaintiff was capable of performing – the Fifth Circuit held:

> Claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

Haas v. Barnhart, 91 F. App'x 942, 947-48 (5th Cir. 2004). Similarly, the 7th Circuit has held that "[w]hen no one question's the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion...." Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2004). Here, Beckner was represented by legal counsel at the hearing before the ALJ. (R. 27). Counsel, however, did not note or otherwise raise the alleged discrepancy between the VE's testimony and the ALJ's hypothetical, despite asking the VE other questions during the hearing. (R. 56-7). Accordingly, Beckner is precluded from raising the alleged discrepancy now.

**B.   The ALJ Gave Appropriate Weight to the Opinions of Dr. McLuckie**

Beckner argues that the ALJ erred in failing to give greater weight to the opinions of his cardiologist, Dr. Alan McLuckie, pursuant to 20 C.F.R. § 416.927(d)(2). However, section 417.927(d)(2) does not require that "more weight" always be given to the opinions of treating sources. Rather, section 417.927(d) directs the ALJ to consider both the supportability of the

physician's opinion and the consistency of the opinion with the record. See 20 C.F.R. §§ 416.927(d)(3), (4). See also Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). If the treating physician's opinion is not supported or is otherwise inconsistent with the record it may be given "significantly less weight." Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996).

First, the ALJ properly noted that Dr. McLuckie's opinions were internally inconsistent. (R. 20). Dr. McLuckie's findings showed the Plaintiff was doing "fairly well from [a] cardiac standpoint" and was not suffering from any "marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or angina discomfort on ordinary physical activity." (R. 528). Furthermore, Dr. McLuckie noted that there was no medical need for Beckner to rest during the typical work day and that Beckner was likely to be absent from work less than once a month. (R. 531, 533). Yet, despite this lack of physical symptoms or limitations, Dr. McLuckie concluded, without explanation, that Beckner could work no more than seven hours in an eight-hour workday. (R. 530-33). The ALJ correctly determined that Dr. McLuckie's opinions were not internally consistent because they were not well supported by "medical signs and laboratory findings." 20 C.F.R. § 416.927(d)(3). Therefore, the ALJ correctly afforded Dr. McLuckie's opinion less weight.

Second, Dr. McLuckie's opinions were not well supported by the objective medical record evidence. The ALJ correctly noted that Dr. McLuckie's opinion was provided in the form of a checklist and lacked a detailed explanation as to why Beckner would be unable to work an eight-hour workday. (R. 18, 529-32). The ALJ noted that the objective medical evidence showed few to no objective abnormalities. (R. 20). The records indicate that Plaintiff had done well from a cardiovascular standpoint after the placement of the stent. (R. 18). By June 2008, Beckner's cardiac testing showed no significant abnormalities, he had no symptoms of angina, and he had

no signs of ischemic wall motion abnormalities. (R. 18-19). Indeed, Beckner's most recent myocardial scans revealed his stress EKG response was normal, his global and left ventricular regional wall motion was normal, and he had zero vessel disease. (R. 639-40).

Moreover, Dr. McLuckie's opinions were not consistent with the opinions of the other treating and examining physicians, none of whom opined Beckner was incapable of working an eight hour work day. Indeed, the opinions of Drs. Brijbassie and Patel, who were Beckner's primary care physicians,[4] both opined that Beckner was capable of performing a range of medium exertional work. (R. 18, 20, 520-23, 677-78).[5] Finally, Dr. McLuckie's opinion was also contradicted by the opinion of Dr. Humphries, who opinioned Beckner was capable of light work, after examining him. (R. 273-77). Therefore, the ALJ's decision to afford Dr. McLuckie's opinion "little" weight, in light of the inconsistencies both within Dr. McLuckie's findings and with the record as a whole, was supported by substantial evidence.

## C. The ALJ Properly Discounted Plaintiff's Complaints of Pain

Beckner asserts that the ALJ improperly evaluated his complaints of pain and erred in concluding that his pain complaints were not credible. Specifically, Beckner argues that the ALJ's alleged reliance on her observations of his symptoms of severe pain was in violation of the Fourth Circuit's "sit and squirm jurisprudence." Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir. 1990); Jenkins v. Bowen, 819 F.2d 1138, at *1 (4th Cir. 1987) ("The ALJ also erred by engaging in so-called sit and squirm jurisprudence when he discounted ... testimony about pain based on his observation that [the claimant] did not seem to be in pain or discomfort at the hearing. This kind of determination is inappropriate for an ALJ, and is generally condemned.").

---

[4] Dr. Patel became Beckner's primary care physician after Dr. Brijbassie left Carillion Internal Medicine. (R. 48).
[5] While the ALJ did not fully credit these opinions, they do lend support to the ALJ's conclusion that Beckner was capable of performing at a level above complete disability.

8

The ALJ did not dispute that Beckner suffered from impairments that could cause pain or that Beckner suffered from some pain. (R. 22). The Court notes that whether Beckner suffers from pain is not the determinative question in the context of this appeal, rather the relevant inquiry is whether that pain credibly causes functional limitations that render Beckner unable to work. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("Pain is not disabling per se...."). Thus, the ALJ correctly assessed whether Beckner's complaints of pain credibly could have cause pain "so severe as to be disabling." (R. 22). Contrary to Beckner's allegations, the ALJ did not base her credibility determination chiefly on her observations of Beckner during the hearing. (R. 22) ("While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis the apparent lack of difficulties with pain during the hearing is given some *slight* weight.") (emphasis added). Rather, the ALJ based her decision on the totality of the record, which as the ALJ noted:

> [F]ail[ed] to demonstrate the presence of any pathological signs, significant objective medical findings, significant laboratory findings, significant radiological findings, or significant neurological abnormalities that would establish the existence of a pattern of pain of such severity as the claimant alleges since he has not provided convincing details regarding factors which precipitate the allegedly disabling pain symptoms claiming that they are present '24/7' or all of the time.

(R. 22). The ALJ's approach was consistent with the applicable guidelines. See 20 C.F.R. §§ 404.1529(c), 416.929(c) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you. We also consider the medical opinions of your treating source and other medical opinions as explained in § 404.1527."). Moreover, the ALJ's inclusion of her own observations to inform her credibility analysis is in accordance with more recent guidance issued

by the Social Security Administration. See Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 61 Fed. Reg. 34483, 34486 (July 2, 1996) ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."). Therefore, this Court finds that the ALJ's assessment of the credibility of Beckner's complaints of pain did not run afoul of the Fourth Circuit's "sit and squirm jurisprudence" and is supported by substantial evidence.

### IV. Conclusion

After review of the record, this Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, this Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Summary Judgment. An appropriate order shall this day issue.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

ENTER: This 29th day of November, 2011

/s/ James C. Turk
Senior United States District Judge